# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SYLVIA TAYLOR, )
 )
       Plaintiff, )
 )  CIVIL ACTION
v. )
 )  No. 12-1007-KHV
MICHAEL J. ASTRUE, Commissioner )
of the Social Security Administration, )
 )
       Defendant. )
_____ )

## MEMORANDUM AND ORDER

Plaintiff appeals the final decision of the Commissioner of Social Security to deny disability insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 401, et seq. For the reasons stated below, the Court finds that the Commissioner's decision should be affirmed.

## Procedural Background

On June 10, 2009, plaintiff filed an application for DIB and on June 30, 2009 she filed an application for SSI. Plaintiff alleged an onset of disability as of March 1, 2009. The Commissioner denied plaintiff's claims initially and on reconsideration. On December 14, 2010, after a hearing, an administrative law judge found that plaintiff was not disabled. On November 4, 2011, the Appeals Council denied plaintiff's request for review of the ALJ decision. The ALJ decision therefore stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c)(3). On January 5, 2012, plaintiff appealed to this Court the final decision of the Commissioner.

## Facts

Plaintiff was born on November 6, 1962 and alleges that she became disabled on March 1, 2009 due to arthritis, migraines, high blood pressure, numbness in her arms and pain in her back,

neck, shoulders, knees, legs and feet. Plaintiff previously worked as a daycare provider, cashier and receptionist. After consideration of the record, the ALJ concluded as follows:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since March 2, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.)*.
>
> 3. The claimant has the following severe impairments: history of diskectomy, hypertension, diffuse myalgias and arthralgias and osteoarthritis (20 CFR 404.120(c) and 416.920(c)).\* \* \*
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).\* \* \*
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) or work requiring lifting and/or carrying 10 pounds occasionally and less than 10 pounds frequently, standing and/or walking 2 hours in an 8-hour workday, and sitting 6 hours in an 8-hour workday. The claimant is limited to work that does not require more than occasional postural maneuvers, such as balancing, stooping, kneeling, crouching and climbing ramps or stairs; she must avoid crawling, climbing ladders, ropes or scaffolds, concentrated exposure to cold temperature extremes and vibration; and she is limited to occupations which do not require exposure to dangerous machinery or unprotected heights. \* \* \*
>
> 6. The claimant is capable of performing past relevant work as a receptionist. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965). \* \* \*
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2009, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

Doc #7-2 at 17-19, 22-23.

Plaintiff appealed the ALJ decision to the Appeals Council and the Council denied plaintiff's request for review.

**Standard Of Review**

The Court reviews the Commissioner's decision to determine whether it is "free from legal error and supported by substantial evidence." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009); see 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Wall, 561 F.3d at 1052; Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). It requires "more than a scintilla, but less than a preponderance." Wall, 561 F.3d at 1052; Lax, 489 F.3d at 1084. Whether the Commissioner's decision is supported by substantial evidence is based on the record taken as a whole. Wall, 561 F.3d at 1052. Evidence is not substantial if it is "overwhelmed by other evidence in the record or constitutes mere conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005).

Plaintiff must demonstrate the error in the rationale or finding of the ALJ; the mere fact that evidence might support a contrary finding will not establish error. See Lax, 489 F.3d at 1084. The possibility of drawing two inconsistent conclusions from the evidence does not mean that the Commissioner's findings are not supported by substantial evidence. Id. The Court may not displace the Commissioner's choice between two fairly conflicting views. Id. Where the ALJ has reached a reasonable conclusion that is supported by substantial evidence in the record, the Court will not reweigh the evidence and reject that conclusion even if the Court might have reached a contrary conclusion in the first instance. Id.

**Analysis**

An individual is under a disability only if she can establish that she has a physical or mental impairment that prevents her from engaging in any substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least 12 months. Thompson v. Sullivan, 987

F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)). Claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education and work experience, engage in other substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). In the first three steps, the Commissioner determines (1) whether claimant has engaged in substantial gainful activity since the alleged onset, (2) whether she has a severe impairment or combination of impairments and (3) whether the severity of any impairment meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). 20 C.F.R. § 404.1520; Williams, 844 F.2d at 750-51. If claimant satisfies steps one, two and three, she will automatically be found disabled; if claimant satisfies steps one and two but not three, she must satisfy step four.

After evaluating step three, the Commissioner assesses claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at steps four and five of the sequential evaluation process. In step four, the Commissioner determines whether, based on claimant's RFC, she can perform past relevant work. 20 C.F.R. § 404.1520(a)(4); see Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four, claimant bears the burden of showing that she had one or more severe impairments that made her unable to perform past relevant work. See Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001). At step five, the burden shifts to the Commissioner to show that based on claimant's RFC, age, education and work experience, she can perform other work. See 20 C.F.R. § 404.1520(a); Haddock v. Apfel, 196 F.3d

1084, 1088 (10th Cir. 1999).

Plaintiff argues that the ALJ erred in determining (1) the severity of her alleged impairments, (2) that her impairments did not meet or equal the criteria of any listed impairment and (3) the credibility of her subjective complaints.

**I.     Step Two Evaluation Of Severity Of Plaintiff's Impairments**

The ALJ found that plaintiff has severe impairments including a diskectomy, hypertension, diffuse myalgias, arthralgias and osteoarthritis.  Plaintiff argues that the ALJ erred at step two in finding that she did not suffer from a severe hand impairment (diminished grip strength) or a severe back impairment.

An impairment is severe if it significantly limits a plaintiff's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1521, 416.921; Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  An impairment imposes significant limitations when it has more than a minimal effect on a claimant's ability to perform basic work.  See Williams, 844 F.2d at 751.  The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521, 416.921. They provide examples of basic work activities including walking, standing, sitting, lifting, pushing, pulling, carrying, handling; seeing, hearing, speaking; understanding, carrying out and remembering simple instructions; using judgment; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521, 416.921.  To reach the question of the impact of the impairment on an individual's basic work activities, the ALJ must find that plaintiff has a medically determinable impairment.  A physical or mental impairment must be established by medical evidence, and must last for a continuous period of at least 12 months.  20 C.F.R. §§ 404.1508-09, 416.908-09.  It must

-5-

result from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Social Security Ruling (SSR) 96-4p. Under no circumstances may the existence of an impairment be established on the basis of symptoms alone. Id. Thus, regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings. Id.

### A.   Step Two Determination Regarding Hand Impairment

Plaintiff first asserts that the ALJ erred in finding that her diminished grip strength is not a severe impairment. The ALJ noted that plaintiff's grip strength is 15.6 pounds on the right and 10.5 pounds on the left, but found that her grip strength was preserved. Plaintiff cites a web site for the proposition that a woman plaintiff's age normally has a grip strength of 41 to 72 pounds. She further points out that she testified that she could not lift even 10 pounds and was limited to lifting five pounds or less, and that she has severe joint pain in her hands due to either rheumatoid arthritis or fibromyalgia. Plaintiff argues that her hand problems are severe because they have a great effect on her ability to function. See SSR 96-3p.

The Commissioner responds that Dr. James Henderson, who conducted the grip strength test, found no hand impairment and stated that plaintiff's grip strength and dexterity were preserved. Tr. 330. The Commissioner asserts that the ALJ justifiably relied on Dr. Henderson's opinion. The Court agrees that plaintiff's independent research notwithstanding, the record supports the ALJ finding that plaintiff does not have a severe hand impairment.

**B.     Step Two Determination Regarding Lower Back Condition**

Plaintiff asserts that the ALJ erroneously found that she does not suffer from a severe lower back condition because he mistakenly believed that she had an implanted intrathecal pump to provide relief for back pain but no longer uses it. See R. 17.[1] Plaintiff points out that she does not have an implanted intrathecal pump, but rather has an implanted dorsal column stimulator. Plaintiff argues that the ALJ also made adverse findings on the credibility of her complaints of back pain because of his misunderstanding. She asks the Court to remand so that the ALJ can properly evaluate her back condition in light of her use of the dorsal column stimulator.

Plaintiff correctly points out that during the hearing, the ALJ referred to an "intrathecal stimulator," an "intrathecal pump stimulator," a "pump" and a "stimulator." Tr. 31, 34, 44, 45. Overall, however, the hearing transcript demonstrates that the ALJ understood that plaintiff had a dorsal column stimulator and not an intrathecal pump.[2] See Tr. 30 (when plaintiff's attorney asked to add additional records concerning plaintiff's "spinal cord stimulator," ALJ responded, "[t]here really isn't any question that she has one"). During the hearing, plaintiff's attorney correctly explained that a dorsal column stimulator provides pain relief through an electrical impulse, while an intrathecal pump administers pain killer. Plaintiff testified that she had "the electrical kind," a "stimulator." She testified that she uses the stimulator every day, even though it jolts her chest

---

[1] Plaintiff asserts that Dr. Watkins also mistakenly understood that plaintiff had an intrathecal pump but no longer used it to manage back pain. Dr. Watkins' report, however, clearly stated that plaintiff had a spinal cord stimulator and did not indicate that plaintiff no longer required the use of the stimulator. See Doc. #7-7 at 3.

[2] At the beginning of the hearing, plaintiff's attorney stated that plaintiff had a "spinal cord stimulator." Tr. 31.

when she turns it on.[3] Tr. 50. When the ALJ asked plaintiff about medical records from March of 2008 which indicated that she was not using the "pump," plaintiff responded, "I've been using it." Id. at 45. Plaintiff testified that she could turn it on and off or increase its intensity. Tr. 45-46. She testified, however, that she only uses it when she is up and moving around. Id. Plaintiff also testified that she never had the stimulator removed and that it required no maintenance. The ALJ did not err in finding that the implanted device caused no functional limitations.[4]

## II.     Step Three Evaluation

At step three of the sequential evaluation process, the ALJ determines whether a claimant's impairments meet or equal one of the listings described in Appendix 1 of the Regulations (20 C.F.R., pt. 404, subpt. P, app. 1). See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The Commissioner has provided a "Listing of Impairments" which describes certain impairments that he considers disabling. 20 C.F.R. § 404.1525(a); see also Pt. 404, Subpt. P, App. 1 (Listing of Impairments). At step three, if plaintiff's condition meets or equals the severity of a listed impairment, that impairment is conclusively presumed disabling. Bowen v. Yuckert, 482 U.S. 137, 141 (1987); Williams, 844 F.2d at 751. Plaintiff has the burden of demonstrating, through medical evidence, that her impairments meet all of the medical criteria contained in a particular listing. Fischer–Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005) (claimant has the "step three burden to present

---

[3] When the ALJ questioned plaintiff about her methods for pain relief, plaintiff mentioned the stimulator and said that it relieved some of her pain. Id. at 40.

[4] In any event, even if the ALJ erred in determining that plaintiff's "pump" (actually a dorsal column stimulator) was not a severe impairment, such an error would not require remand. See Hill v. Astrue, No. 07-4226, 2008 WL 3339174, at *1 (10th Cir. Aug. 12, 2008) (failure to find that additional alleged impairments were severe not reversable error if ALJ considers effects of all impairments in determining RFC, including those he deems severe and those he deems not severe).

-8-

evidence establishing her impairments meet or equal listed impairments").

An impairment that manifests only some of the listing criteria, no matter how severely, does not qualify to meet or equal the listing. Sullivan v. Zebley, 493 U.S. 521, 530.[5] "Whether the findings for an individual's impairment meet the requirements of an impairment in the listings is usually more a question of medical fact than a question of medical opinion. . . . In most instances, the requirements of listed impairments are objective, and whether an individual's impairment manifests these requirements is simply a matter of documentation." Avery v. Astrue, 313 Fed. Appx. 114, 121 (10th Cir. 2009) (quoting SSR 96-5p). Similarly, a finding that an impairment is medically equivalent to a listed impairment must be based solely on medical evidence. See Kemp v. Bowen, 816 F.2d 1469, 1473 (10th Cir. 1987).

Plaintiff argues that the ALJ erred in finding that her condition does not meet or medically equal a listed impairment. Plaintiff specifically argues that her low back condition meets or equals Listing 1.04A.

Listing 1.04A requires that plaintiff meet a two-prong test. Specifically, plaintiff must show (1) a disorder of the spine resulting in compromise of a nerve root or the spinal cord and (2) evidence of nerve root compression, as follows:

---

[5] "The [Commissioner] explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of [her] age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" Zebley, 493 U.S. at 532-33 (emphasis in original) (quoting 20 C.F.R. § 416.925(a) (1989)). The listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." Yuckert, 482 U.S. at 153. Because the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively. Clark v. Astrue, No. 11-1331-JWL, 2012 WL 4856996, at *3 (D. Kan. Oct. 12, 2012) (citing Caviness v. Apfel, 4 F. Supp.2d 813, 818 (S.D. Ind. 1998)).

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
>> A. Evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.04A.

The ALJ found that plaintiff did not meet Listing 1.04 because she does not have nerve root compression, she had no asymmetrical reflex, sensory or motor deficits and her "grip strength and dexterity were preserved." R. 20. The ALJ based this finding in part upon the consultive exam of Dr. Peter Winston.

Plaintiff asserts that she meets the first prong of 1.04, i.e. a disorder of the spine resulting in compromise of a nerve root or spinal cord, because she had a herniated disc with a laminectomy at L5-S1. Plaintiff cites the following medical evidence in support of her argument that she meets all second prong requirements of 1.04, i.e. evidence of nerve root compression, as follows:

> (I) distribution of pain – Wichita Clinic R. 285-89, 292 (back and neck pain, low back tender to palpation); Pratt Medical Clinic R. 325; Henderson R. 328; Heart of Kansas R. 347, 352 (constant low back pain).
> (ii) limitation of motion of the spine Henderson R. 328 (range of motion limited in flexion & extension, lumbar bend 24" to floor, paraspinous muscle spasm); Heart of Kansas R. 348, 353 (decreased ROM).
> (iii) motor loss (atrophy w/ associated muscle weakness or muscle weakness) Henderson R. 328 (grip strength 15.6 lbs right, 10.5 lbs left).
> (iv) accompanied by sensory or reflex loss, Henderson R. 329 (reflexes absent in ankles, bilaterally); Pratt Internal Medicine R. 354 (lot of muscle spasm); Pratt Medical Center R. 324 (bilateral numbness in arms, muscle spasm in legs, tingling and decrease sensation in legs); Heart of Kansas R. 348, 353 (paresthesias of legs, > left, positive DTR's).
> (v) positive straight-leg raising test, both sitting and supine. Henderson at R. 328

(bilateral 70º supine, 90º sitting).

Plaintiff's Brief (Doc. #10) at 7.

Plaintiff points out that Dr. Henderson found that her ankle reflexes were absent bilaterally and that her grip strength was significantly decreased. Plaintiff argues that remand is required so a medical advisor can testify whether plaintiff meets or equals Listing 1.04, particularly in light of the ALJ's failure to note that plaintiff has had a spinal cord stimulator since 2002.

The Court finds that the ALJ's determination that plaintiff's impairments did not meet or equal the criteria of a listed impairment is supported by substantial evidence on the record as a whole. The ALJ cited Dr. Winston's report as well as other medical evidence in support of his finding that plaintiff did not have nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required by the listing. Doc. #7-2 at 20. Without addressing the lack of nerve root compression, plaintiff argues that she has the required *characteristics* of nerve root compression identified by the listing. See Plaintiff's Brief (Doc. #10) at 7. But the ALJ correctly recognized that without the underlying nerve root compression, plaintiff does not meet the listing. Doc. #7-2 at 18.[6]

Likewise, plaintiff cannot establish that her impairment equals Listing 1.04A. If claimant has an impairment that is described in the listings, but does not exhibit one or more of the findings specified in the listing, or one or more of the findings is not as severe as specified in the particular listing, claimant must establish other impairment-related findings that are at least of equal medical significance to the required criteria. See 20 C.F.R. §§ 404.1526, 416.926; Avery v. Astrue, 313 Fed.

---

[6] Even if Plaintiff did have nerve compression, she still would not meet the listing. Plaintiff argues that her grip strength results qualify as motor loss. See Plaintiff's Brief (Doc. #10) at 7. Dr. Henderson, however, found that her grip strength was preserved. Tr. 328, 330. Further, Dr. Henderson did not make a finding of either a positive sitting or supine straight-leg test. Tr. 330.

Appx. 114, 122 (10th Cir. 2009). Plaintiff has no other impairment-related findings that are at least of equal medical significance to the required nerve root compression, or the characteristics of motor loss.

The Court finds that substantial evidence on the record as a whole supports the ALJ determination that plaintiff's impairments, either singly in combination, did not meet or equal the requirements of a listed impairment.

### III.  Credibility Determination

Plaintiff argues that the ALJ erred by not engaging in a proper credibility analysis. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990). Credibility determinations are peculiarly the province of the finder of fact and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144. Therefore the Court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994). But see Thompson, 987 F.2d at 1490 (deference not absolute rule).

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms and impairments as follows:

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment, that could reasonably be expected to produce the alleged disabling pain. . . . The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488 (internal citations omitted).

When ascertaining the credibility of a claimant's testimony, the Commissioner should take

-12-

into consideration all the evidence, including the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence. Hargis v. Sullivan, 945 F.2d 1482, 1489-90 (10th Cir. 1991). When the ALJ finds that claimant is not credible, the ALJ must make specific findings and state his reasons for disbelief. See Caldwell v. Sullivan, 736 F. Supp. 1076, 1081 (D. Kan. 1990).

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. It appears that he also found a loose nexus between the impairment and the subjective complaints of pain. At the final step of the pain analysis, however, the ALJ found plaintiff's testimony not entirely credible, as follows:

> Medical records indicate that the claimant does have a history of complaint of back and neck pain. Although the claimant has alleged symptoms of pain, her doctors have not imposed any restrictions against sitting. While the claimant testified that she could not sit very long, she reported during her disability hearing that she watches television, does the dishes while sitting on a stool and swings in her yard swing daily, which are sedentary activities.
>
> Similarly, the medical evidence of record does not support that the claimant is as limited in standing and walking as she reports. Although the claimant reported that she must lie down several times during the day, this limit appears to be self-imposed. While the claimant reported during her disability hearing that she was limited in her ability to stand, there is little indication that she reported such severe symptoms to any of her health providers. * * *
>
> In evaluating persuasiveness of testimony, the undersigned notes that there are inconsistencies between the claimant's allegations and the medical evidence of record. For example, the claimant testified during her disability hearing to significant limitations as a result of her back and neck pain. Although record from Pratt Regional Medical Center dated June 4, 2009 indicated that the claimant presented with complaint of neck and back pain, the claimant was administered Toradol and

-13-

discharged in fair condition. While the claimant was advised to follow-up with her
primary care physician, she presented no evidence that she did so. . . . Additionally,
the claimant has not received the type of medical treatment one would expect for a
disabled individual. Although the claimant has sought treatment for the allegedly
disabling impairments, that treatment has been essentially routine and conservative
in nature post-surgery. While claimant testified to significant limitations in sitting,
standing and walking, and stated that she must lie down during the day, these limits
appear to be self-imposed. The claimant has presented no evidence that any
physician has placed her on work restrictions. In fact, while the claimant reported
during an office visit on January 27, 2009 that she would like to get disability due to
her medical problems, her physician Terri Walton, M.D. noted that she doubted that
the claimant would qualify for any disability.

In addition, the undersigned notes that there is evidence in the file that the claimant
has not been entirely compliant in taking prescribed medications or following
doctor's recommendations. This suggests that the claimant's symptoms may not have
been as limiting as she has alleged. Although the claimant underwent an intrathecal
pump implantation in 2002, medical records from the Wichita Clinic dated March 7,
2008 revealed that the pump was not in use. Similarly, records from Pratt Regional
Medical Center dated June 4, 2009 indicated that the claimant stated that while she
had [been] prescribed Lisinopril, she had not been taking it. While the undersigned
acknowledges the claimant's limited financial resources, her medical records are
sparse and document limited attempts to obtain free or low-cost treatment. Further,
the medical record of evidence indicates that when she is able to take prescribed
medications, she reports that they are generally effective.

Further, the claimant's daily activities are consistent with the above residual
functional capacity assessment but are inconsistent with the disability allegations.
While the claimant ultimately alleged that she is unable to work due to back and neck
pain, her contentions are not supported by her daily activities that showed, near the
time of filing, that she was able to prepare quick and easy meals, ride in the car,
grocery shop, sit in her yard swing and watch the wildlife where she lives. In fact,
the claimant testified during her disability hearing that she helps her husband care for
their three dogs, nine cats and two ferrets, is able to do laundry in spurts and does the
dishes while sitting on a stool.

Doc. #7-2 at 20-21 (internal citations omitted).

The ALJ rejected plaintiff's complaints of disabling pain in part because they were inconsistent with her activities of daily living. Plaintiff asserts that the ALJ's reference to watching television ignores the fact that she could do so while lying down, and therefore does not support a

conclusion that she is unlimited in her sedentary activities. The ALJ did not rely on television watching as the primary support for concluding that plaintiff could do sedentary activities, however, and the Court finds that substantial evidence supports the ALJ's conclusion as to plaintiff's daily activities.

The ALJ also found plaintiff's claims of disabling pain not entirely credible because she had not received the type of medical treatment one would expect for a disabled individual and did not follow up with recommended medical treatment. Decker v. Chater, 86 F.3d 953, 955 (10th Cir. 1996) (failure to follow prescribed treatment is legitimate consideration in evaluating validity of alleged impairment). Plaintiff asserts that the ALJ failed to account for her testimony that she did not seek further treatment for her pain because she lacked insurance and financial resources.[7] The ALJ, however, correctly noted the medical records documented very limited attempts to obtain free or low-cost medical treatment. See Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000) (in evaluating whether pain was disabling, ALJ not prohibited from considering what attempts plaintiff made to relieve pain). The ALJ noted that when plaintiff did receive treatment, none of her physicians placed any restrictions on her ability to work and that one of her doctors doubted that plaintiff would qualify for any disability benefits. See Kelley v. Chater, 62 F.3d 335, 338 (10th Cir.

---

[7] Plaintiff also asserts that the ALJ did not credit her complaints of pain because he mistakenly believed that she no longer needed to use an intrathecal pump. In his written opinion, the ALJ stated that medical records from March of 2008 indicated that plaintiff was not using a pump *at that time*. At the hearing, however, plaintiff testified that she was currently using the pump, and the ALJ did not find otherwise.

In her brief, plaintiff asserts that the ALJ relied upon Dr. Watkins' opinion that plaintiff would not be eligible for disability benefits, and that Dr. Watkins rendered that opinion based on the mistaken belief that plaintiff no longer uses an intrathecal pump. As noted, however, Dr. Watkins' report clearly stated that plaintiff had a spinal cord stimulator and did not state that plaintiff no longer required use of the stimulator. See Doc. #7-7 at 3.

1995) (in analyzing claimant's credibility, ALJ may properly consider fact that no physician opined that claimant was disabled). Further, the ALJ noted that when plaintiff did receive treatment, the medications were generally effective.

The Court finds that the ALJ properly considered the type, frequency and effect of plaintiff's treatment in evaluating the credibility of her subjective complaints. The ALJ credibility findings are supported by substantial evidence on the record as a whole. See Ellison v. Sullivan, 929 F.2d 534, 537 (10th Cir. 1990). Because the ALJ articulated the inconsistencies on which he relied in discrediting plaintiff's subjective complaints, and because those inconsistences are supported by the record, the Court finds that the ALJ credibility finding should be affirmed. See Dellinger v. Barnhart, 298 F. Supp.2d 1130, 1137-38 (D. Kan. 2003).

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's decision.

Dated this 20th day of February, 2013 at Kansas City, Kansas.

                                                                                 s/ Kathryn H. Vratil
                                                                                  KATHRYN H. VRATIL
                                                                                  United States District Judge